**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)

Attorneys for Defendant, Hassan Tatanaki

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 Case |
|  | : | No. 08-22581(ASH) |
| EOS AIRLINES, INC., | : |  |
|  | : |  |
| Debtor. | : |  |

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| EOS AIRLINES, INC. | : |  |
|  | : | Adv. Pro. No. 08-08406 (ASH) |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : |  |
|  | : |  |
| NATIONAL CITY BANK OF MIDWEST | : |  |
| HASSAN TATANAKI, | : |  |
| FREEMARKET GLOBAL, LTD. | : |  |
| ERIKA VILLALBA, and JOHN DOE | : |  |
|  | : |  |
| Defendants. | : |  |

------------------------------------------------------------x

## ANSWER WITH COUNTERCLAIMS

Defendant Hassan Tatanaki ("Defendant"), by and through his attorneys, Windels Marx

Lane & Mittendorf, LLP, as and for his Answer and Counterclaims to the Complaint in the

above-captioned Adversary Proceeding of the Plaintiff, Eos Airlines, Inc. ("Plaintiff" or "EOS"),

respectfully allege as follows:

{40264530:1}

## PARTIES AND PERSONAL JURISDICTION

1.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 1 of the Complaint.

2.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 2 of the Complaint and therefore denies same, except he admits that National City Bank of Midwest is a National Banking Association, having its principal place of business at 3331 West Big Beaver Road, Suite 200, Troy, Michigan 48084-2814.

3.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 3 of the Complaint, except he denies that his principal address is 1 El Moshier Ahmed Simail St., Heliopolis 11361, Cairo, Egypt. Mr. Tatanaki's principal address is 1 El Moshier Ahmed Ismail St., Heliopolis 11316, Cairo, Egypt.

4.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 4 of the Complaint and therefore denies same.

5.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 5 of the Complaint and therefore denies same.

6.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 6 of the Complaint and therefore denies same.

## JURISDICTION AND VENUE

7.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 7 of the Complaint.

8.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 8 of the Complaint.

9.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 9 of the Complaint.

## FACTUAL BACKGROUND

10.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 10 of the Complaint.

11.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 11 of the Complaint.

12.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 12 of the Complaint and therefore denies same.

A.      **Provision of Charter Services, Generally**

13.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 13 of the Complaint and therefore denies same.

14.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 14 of the Complaint and therefore denies same.

15.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 15 of the Complaint.

**B.     <u>The Canceled Charter and Related Costs</u>**

16.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 16 of the Complaint and therefore denies same.

17.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 17 of the Complaint and therefore denies same.

18.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 18 of the Complaint and therefore denies same.

19.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 19 of the Complaint and therefore denies same.

20.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 20 of the Complaint and therefore denies same.

21.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 21 of the Complaint and therefore denies same.

22.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 22 of the Complaint and therefore denies same.

23.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 23 of the Complaint and therefore denies same.

## C.     The Charter Contract

24.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 24 of the Complaint and therefore denies same, except he admits that on or about March 5, 2008 MAM Aviation Ltd., a United Kingdom charter broker, contacted Eos on behalf of Mr. Tatanaki to request pricing for a charter itinerary, which was negotiated and revised over the following month.

25.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 25 of the Complaint.

26.     Defendant Hassan Tatanaki admits that he deposited $470,200.76 into the Escrow Account. Defendant Hassan Tatanaki denies he agreed to pay $441,000 for the base charter services. Defendant Hassan Tatanaki avers that he agreed to pay $420,000 for the base charter services plus a 5% brokers fee to 2008 MAM Aviation Ltd., a United Kingdom charter broker. Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the remaining allegations set forth in paragraph 26 of the Complaint as there has not been a proper accounting of "estimated incidentals," taxes, and fuel costs from Eos.

27.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 27 of the Complaint and therefore

denies same, except that he admits that the "Outbound Trip" from JFK to Stanstead on April 23, 2008 and from Stansted to Cairo on April 24, 2008, occurred without incident.

28.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 28 of the Complaint and therefore denies same.

29.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 29 of the Complaint and therefore denies same.

30.      Defendant Hassan Tatanaki admits that the Plaintiff elected to ferry the aircraft from Stansted to Cairo on April 29, 2008 instead of April 28, 2008 thereby causing the ferried flight from Stansted to Cairo to be late and delaying the return of Defendant and/or his passengers to Stansted. Defendant Hassan Tatanaki denies that the ferried flight from Stansted to Cairo was late by eight (8) hours. Defendant Hassan Tatanaki avers that said flight was late by approximately ten (10) hours. Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the remaining allegations set forth in paragraph 30 of the Complaint and therefore denies same.

**D.      Tatanaki and His Agent Refuse to Pay**

31.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 31 of the Complaint.

E.      Funds Held in Escrow and Claims Filed by Parties

32.      Defendant Hassan Tatanaki admits the allegations set forth in paragraph 32 of the Complaint.

33.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 33 of the Complaint with respect to the two (2) claims Defendant filed against Debtor's estate but denies the allegation that his claims are not supported by documentary evidence.

### Count I
(Turnover Pursuant to 11 U.S.C. § 542 – National City)

34.     Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 33 hereinabove as though set forth at length herein.

35.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 35 of the Complaint.

36.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 36 of the Complaint.

37.     Defendant Hassan Tatanaki asserts that allegations set forth in paragraph 37 of the Complaint constitute allegations and/or conclusions of law to which Defendant need not respond. To the extent a response is required, Defendant denies same.

### Count II
(Promissory Estoppel – Villalba, Freemarket, Tatanaki, John Doe)

38.     Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 37 hereinabove as though set forth at length herein.

39.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 39 of the Complaint and therefore denies same.

40.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 40 of the Complaint, except he denies that he was Erika Villalba's principal or employer.

41.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 41 of the Complaint and therefore denies same.

42.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 42 of the Complaint and therefore denies same.

43.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 43 of the Complaint and therefore denies same.

44.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 44 of the Complaint and therefore denies same.

### Count III
(Unjust Enrichment – Villalba, Freemarket, Tatanaki, John Doe)

45.      Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 44 hereinabove as though set forth at length herein.

46.      Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 46 of the Complaint and therefore denies same.

47.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 47 of the Complaint except he denies that he was Erika Villalba's principal or employer.

48.     Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 48 of the Complaint and therefore denies same.

49.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 49 of the Complaint.

<u>**Count IV**</u>
(Breach of Contract – Tatanaki)

50.     Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 49 hereinabove as though set forth at length herein.

51.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 51 of the Complaint.

52.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 52 of the Complaint, except he admits that  $470,200.76 was deposited in the Escrow Account at National City Bank of Midwest.

53.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 53 of the Complaint.

54.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 54 of the Complaint.

55.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 55 of the Complaint.

56.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 56 of the Complaint.

## Count V
(Unjust Enrichment – Tatanaki)

57.    Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 56 hereinabove as though set forth at length herein.

58.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 58 of the Complaint, except he admits that he was a party to a contract with Eos whereby Eos provided goods and services to Defendant.

59.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 59 of the Complaint.

60.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 60 of the Complaint.

## Count VI
(Promissory Estoppel – Tatanaki)

61.    Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 60 hereinabove as though set forth at length herein.

62.    Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 62 of the Complaint except he denies that he was Erika Villalba's principal or employer.

63.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 63 of the Complaint.

64.    Defendant Hassan Tatanaki is without sufficient information or knowledge at this time to admit or deny the allegations set forth in paragraph 64 of the Complaint, except he denies that he was Erika Villalba's principal or employer.

65.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 65 of the Complaint, except he admits he received charter services.

66.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 66 of the Complaint.

67.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 67 of the Complaint.

<u>**Count VII**</u>
(Declaratory Judgment – Tatanaki)

68.    Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 67 hereinabove as though set forth at length herein.

69.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 69 of the Complaint, except he admits he submitted two proofs of claim in Plaintiff's chapter 11 proceeding.

70.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 70 of the Complaint. Defendant is asserting claims against Plaintiff based on theories of breach of contract, promissory estoppel, and unjust enrichment.

71.    In response to paragraph 71 of the Complaint, Defendant Hassan Tatanaki avers that the referenced "Tatanaki Contract" is a written document and its terms, conditions and provisions speak for themselves. Defendant Hassan Tatanaki further avers that the Tatanaki

Contract, at section 5.B, contains language different from what is cited in paragraph 71 of the Complaint.

72.    In response to paragraph 72 of the Complaint, Defendant Hassan Tatanaki avers that the referenced "Tatanaki Contract" is a written document and its terms, conditions and provisions speak for themselves. Defendant further avers that the language of the Tatanaki Contract, at section 4.A, is taken out of context as it is cited in paragraph 72 of the Complaint.

73.    Defendant Hassan Tatanaki admits the allegations set forth in paragraph 73 of the Complaint.

74.    Defendant Hassan Tatanaki asserts that allegations set forth in paragraph 74 of the Complaint constitute allegations and/or conclusions of law to which Defendant need not respond. To the extent a response is required, Defendant Hassan Tatanaki denies same.

75.    Defendant Hassan Tatanaki asserts that allegations set forth in paragraph 75 of the Complaint constitute allegations and/or conclusions of law to which Defendant need not respond. To the extent a response is required, Defendant Hassan Tatanaki denies same.

76.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 76 of the Complaint.

77.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 77 of the Complaint.

78.    Defendant Hassan Tatanaki denies the allegations set forth in paragraph 78 of the Complaint.

## Count VIII
(Objection to Tatanaki Claims)

79.     Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 78 hereinabove as though set forth at length herein.

80.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 80 of the Complaint, except he admits that Debtor objects to Defendant's claims pursuant to 11 U.S.C. §502 and Federal Rule of Bankruptcy Procedure 3007.

81.     Defendant Hassan Tatanaki admits that Claim number 479 asserts "Breach of Contract." The allegation that the Federal Rules of Bankruptcy Procedure required Defendant to attach a copy of a contract to the claim constitutes an allegation and/or conclusion of law to which Defendant Hassan Tatanaki need not respond. To the extent that a response is required, Defendant Hassan Tatanaki denies same.

82.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 82 of the Complaint, except he admits that Claim number 480 asserts "Services Performed."

83.     Defendant Hassan Tatanaki denies the allegations set forth in paragraph 83 of the Complaint.

## PRAYER FOR RELIEF

84.     Defendant Hassan Tatanaki admits the allegations set forth in paragraph 84 subparagraphs (a) through (g) of the Complaint with respect to the relief sought by Plaintiff, but denies Plaintiff's entitlement to such relief and Plaintiff's allegations as to the statutory predicates for the relief sought.

## AFFIRMATIVE DEFENSES

85.    Defendant Hassan Tatanaki repeats, restates, reiterates, and realleges paragraphs 1 through 84 hereinabove as though set forth at length herein.

86.    By way of affirmative defense, and upon information and belief, the Complaint fails to state a claim upon which relief can be granted.

87.    By way of affirmative defense, and upon information and belief, Plaintiff's claims are banned by the doctrines of waiver, estoppel and laches.

88.    By way of affirmative defense, and upon information and belief, Plaintiff's claims are banned by the doctrines of unclean hands, in pari delicto and consent.

89.    By way of affirmative defense, and upon information and belief, Plaintiff's claims are banned by the doctrines of recoupment and setoff.

## COUNTERCLAIM

90.    Defendant, Hassan Tatanaki, ("Defendant" or "Mr. Tatanaki") by and through his attorneys, Windels Marx Lane & Mittendorf, LLP, as and for his Counterclaim against Plaintiff, Eos Airlines, Inc. ("Plaintiff" or "EOS") respectfully allege as follow:

## THE PARTIES

91.    Defendant Hassan Tatanaki resides at 1 El Moshier Ahmed Ismail St., Heliopolis 11361, Cairo, Egypt.

92.    Upon information and belief, Plaintiff Eos Airlines, Inc. is a Delaware corporation that has its principal place of business at P.O. Box 598, Purchase, New York 10577.

## JURISDICTION AND VENUE

93.     This Court has jurisdiction over this Counterclaim under 28 U.S.C.§§ 157(b)(1) and (2) and 28 U.S.C. § 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b); (2)(A).

94.     The statutory predicate for the relief requested herein is § 1141 of the Bankruptcy Code.

95.     Venue is proper in this District under 28 U.S.C §1409(a) as this Counterclaim is to an Adversary Proceeding arising under title 11 of the United States Code and is related to a case under title 11 of the United States Code filed in this District.

## FACTS

96.     Upon information and belief, on or about March 5, 2008, Moira Fieldwick of MAM Aviation Ltd., a United Kingdom charter broker, contacted Eos on behalf of Mr. Tatanaki to inquire into chartering an Eos aircraft between John F. Kennedy International Airport ("JFK"), London, United Kingdom, Stansted Airport ("Stansted"), and Cairo, Egypt for the transportation of guests to his son's wedding in Cairo, Egypt.

97.     The itinerary and pricing for this trip were negotiated between Ms. Fieldwick and Eos and revised over the next six weeks.

98.     On or about April 22, 2008, Mr. Tatanaki executed a charter aircraft services agreement (the "Contract") with Eos Airlines, Inc. A true and accurate copy of the Contract is attached hereto as Exhibit A. Under the Contract, Mr. Tatanaki chartered an Eos Airlines aircraft to fly from JFK to Stansted on April 23, 2008 and from Stansted to Cairo on April 24, 2008 (the "Outbound Trip"). Mr. Tatanaki agreed to pay to have the aircraft ferried back to Stansted on April 24, 2008. Mr. Tatanaki also agreed to pay to have the aircraft again ferried from Stansted

to Cairo on April 28, 2008. The final leg of the trip included a 6:00 a.m. local scheduled departure time from Cairo on April 29, 2008 to Stansted and then continuing on to JFK (the "Return Trip").

99.     Under the Contract, Mr. Tatanaki agreed to pay: (i) $420,000 for the base charter services plus a 5% brokers fee to MAM Aviation Ltd., a United Kingdom charter broker; (ii) $4,200.76 in taxes; (iii) $10,000 in estimated incidentals; and (iv) $15,000 for additional fuel costs, for a total contract price of $470,200.76, to be reconciled after the charter was completed. Mr. Tatanaki deposited the entire amount of $470,200.76 into an escrow account at National City Bank of Midwest (the "Deposit"). See Exhibit B to Plaintiff's Complaint.

100.    The Contract required first-class accommodations and/or catering at all legs of the charter, which comprised the $10,000 in estimated incidentals.

101.    The Outbound Trip occurred without incident. The Return Trip violated the contract as it was delayed by nearly ten (10) hours, lacked first-class accommodations and/or catering, and included Eos staff as passengers on the aircraft without the consent of or compensation to Mr. Tatanaki.

102.    According to the Contract, flight EO9805 was scheduled to depart Cairo at 6:00 a.m. local time on April 29, 2008.

103.    Upon information and belief, flight EO9805 did not depart Cairo until approximately 15:45 local time, nearly ten (10) hours later, on April 29, 2008.

104.    The contract required Eos to ferry the aircraft from Stansted to Cairo on April 28, 2008. Instead, Eos elected to ferry the aircraft from Stansted to Cairo on April 29, 2008. This delay in the ferried flight from Stansted to Cairo caused the nearly ten (10) hour delay in the return of Mr. Tatanaki and his passengers from Cairo to Stansted.

105.   Upon information and belief, the delay in the ferried flight from Stansted to Cairo was not beyond the control of Eos.

106.   On Sunday April 27, 2008, Moira Fieldwick of MAM Aviation Ltd., a United Kingdom charter broker, contacted Pasquale Barone of Eos Airlines to confirm that Eos would be operating Flight EO9805 departing Cairo on April 29, 2008 at 6:00 a.m. local time for Stansted as per the Contract.

107.   Ms. Fieldwick's April 27, 2008 email to Mr. Barone reads "I do not want any surprises on Tuesday morning (April 29, 2008) with passengers at Cairo and no aircraft!" Mr. Barone's reply email dated April 27, 2008 reads "[w]e intend to operate the return charter."

108.   On Monday April 28, 2008, Dave Brown, Vice President of Operations Planning for Eos Airlines further assured Ms. Fieldwick via email "I believe everything is in place for this flight. We have paid the handling agents, caterer, and fuelers in advance." The subject line of said email read "RE: Flight EO9805 29th April 2008 – Cairo – Stansted – New York."

109.   The Contract, at section 4.A., states in relevant part:

In the event CHARTERER does not have passengers ready for boarding at the time specified, the flight may proceed without said passengers and EOS shall not be liable to the CHARTERER or the passengers for their transportation or expenses; nor shall EOS refund any portion of the Charter price to the CHARTERER.

110.   Upon information and belief, Mr. Tatanaki, as "CHARTERER" under the contract, did not have his passengers ready for boarding flight EO9805 scheduled to depart Cairo at 6:00 a.m. local time on April 29, 2008 because said flight was late by nearly ten (10) hours. Said flight departed Cairo at approximately 3:45 p.m. local time on April 29, 2008.

111.   Upon information and belief, ten (10) passengers had to be flown back from Cairo to JFK first class on April 29, 2008 while flight EO9805 was delayed, with other passengers

missing their connecting flights, having to take additional overnight accommodations and revalidate their airline tickets for later flights.

112.    Upon information and belief, Eos did not provide first-class accommodations and/or catering on the Cairo to Stansted leg of the Return Trip flight EO9805 because Eos' caterer, DO & CO Event & Airline Catering Limited ("Do&Co"), breached its contract with Eos and refused to provide catering services at Stansted on April 28, 2008.

113.    Upon information and belief, Eos put between fourteen (14) and eighteen (18) members of its staff on the Stansted to JFK leg of the Return Trip flight EO9805 without the consent of or compensation to Mr. Tatanaki.

114.    Upon information and belief, the nearly ten (10) hour delay in flight EO9805 departing from Cairo to Stansted on April 29, 2008 caused inconvenience, embarrassment, and additional expense to Mr. Tatanaki.

115.    For the foregoing reasons, Mr. Tatanaki has not consented to the release of his $470,200.76 deposit. National City Bank of Midwest continues to hold the Deposit in the escrow account.

116.    Mr. Tatanaki has filed two claims against the Debtor's estate: claim number 479 in the amount of $120,765 for "Breach of Contract" and claim number 480 in the amount for "Services Performed."

## AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract alleged against plaintiff)

117.    Defendant repeats, restates, reiterates, and realleges paragraphs 1 through 117 hereinabove as though set forth at length herein.

118.    Eos and Mr. Tatanaki were party to a valid, binding contract. (See Exhibit B).

119.   Mr. Tatanaki is not obligated to pay Eos the amount of $470,200.76, which is now held in an escrow account at National City Bank of Midwest, because Eos failed to substantially perform its obligations under the Contract.

120.   Eos breached the Contract by: (i) electing to ferry the aircraft from Stansted to Cairo on April 29, 2008 instead of April 28, 2008 thereby delaying the return of Mr. Tatanaki and his passengers from Cairo to Stansted by approximately ten (10) hours; (ii) not providing first-class accommodations and/or catering on the Cairo to Stansted leg of the Return Trip flight EO9805; and (iii) allowing between fourteen (14) and eighteen (18) members of Eos's staff to board as passengers on the Stansted to JFK leg of the Return Trip flight EO9805 without the consent of or compensation to Mr. Tatanaki.

121.   Mr. Tatanaki has rightfully withheld his consent to release the Deposit.

122.   As a direct and proximate result of Eos's failure to substantially perform its obligations under the Contract, Mr. Tatanaki has been damaged in the amount of not less than $470,200.76, plus applicable interest from April 30, 2008 and attorney's fees and costs.

## AS AND FOR A SECOND COUNTERCLAIM
**(Promissory Estoppel alleged in the alternative against Plaintiff)**

123.   Defendant repeats, restates, reiterates, and realleges paragraphs 1 through 118 hereinabove as though set forth at length herein.

124.   In reliance upon promises made by Eos to provide charter services, with first class accommodations and/or catering, at certain scheduled times, Mr. Tatanaki deposited $470,200.76 into an escrow account at National City Bank of Midwest.

125.   Mr. Tatanaki reasonably relied upon Eos's promises to provide charter services, with first class accommodations and/or catering, at certain predetermined scheduled times.

126.    The charter services Mr. Tatanaki and his passengers received during the Return Trip were ten (10) hours later than the scheduled predetermined time Eos promised and lacked first class accommodations and/or catering.

127.    Mr. Tatanaki has suffered damages in the amount of not less than $470,200.76.

128.    To the extent that Mr. Tatanaki is unable to recover on the Contract, Defendant is entitled to damages of not less than $470,200.76 arising out of his reasonable reliance upon the promise to provide charter services at scheduled times made by Eos.

**AS AND FOR A THIRD COUNTERCLAIM**
**(Unjust Enrichment alleged in the alternative against Plaintiff)**

129.    Defendant repeats, restates, reiterates, and realleges paragraphs 1 through 124 hereinabove as though set forth at length herein.

130.    In reliance upon repeated assurances from agents and/or employees of Eos that predetermined scheduled flights would arrive and depart on time, Mr. Tatanaki incurred significant costs related to passenger re-scheduling, flight cancellation, hotel costs and similar charges in an amount of not less than $120,765.00 while the Cairo to Stansted leg of the Return Trip flight EO9805 was delayed for nearly ten (10) hours.

140.    Upon information and belief, Eos put between fourteen (14) and eighteen (18) members of its staff on the Stansted to JFK leg of the Return Trip flight EO9805 without the consent of or compensation to Mr. Tatanaki.

141.    To the extent Mr. Tatanaki cannot recover on the Contract, Mr. Tatanaki will be without a remedy at law and Eos will be unjustly enriched in the amount of not less than $120,765.00.

**WHEREFORE ALL PREMISES CONSIDERED**, Defendant and counterclaim plaintiff, Hassan Tatanaki, demands judgment in his favor and against Plaintiff, Eos Airlines, Inc., as follows:

A.    Dismissing plaintiff's Complaint in its entirety;

B.    On the First Counterclaim, declaring that Plaintiff is liable to Defendant Hassan Tatanaki for breach of contract and assessing damages against Plaintiff for breach of contract of not less than $470,200.76 plus applicable interest from April 30, 2008 and attorney's fees and costs.

C.    On the Second Counterclaim, assessing against Plaintiff damages for promissory estoppel of not less than $470,200.76 plus applicable interest from April 30, 2008 and attorney's fees and costs.

C.    On the Third Counterclaim, assessing against Plaintiff damages for unjust enrichment of not less than $120,765 plus applicable interest, costs, or attorney's fees.

D.    Declaring against Plaintiff as follows: (i) Defendant Hassan Tatanaki is entitled to recovery with regard to any and all damages arising from the delay of the Return Trip and thus Plaintiff's breach of contract; (ii) the Montreal Convention does not apply to such recovery nor does it provide any adequate and/or exclusive remedy for Defendant Hassan Tatanaki with regard to Plaintiff's breach of contract; (iii) in the alternative, if the Montreal Convention does apply to the services contemplated by and provided by Plaintiff, it does not limit Defendant Hassan Tatanaki's damages; (iv) Plaintiff's exclusive remedy lies in an indemnification action against DO & CO Event & Airline Catering Limited rather than the instant action against Defendant Hassan Tatanaki.

E.    Awarding Defendant such other and further relief as to this Court seems  just and

proper.

Dated:  New York, New York
        October 17 , 2008

                                    **WINDELS MARX LANE & MITTENDORF, LLP**

                            By:    _____
                                    **Charles E. Simpson (CES-2130)**
                                    **A Member of the Firm**

                                    156 West 56th Street
                                    New York, New York 10019
                                    (212) 237-1000

                                    Attorneys for Defendant, Hassan Tatanaki