Ronald S. Beacher (RB8837)
Marie Polito Hofsdal (MP7042)
**DAY PITNEY LLP**
7 Times Square
New York, New York 10036-7311
Telephone: (212) 297-5800
Facsimile: (212) 916-2940

Attorneys for National City Bank, a national banking
association, successor by merger to National City Bank of Midwest

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| EOS AIRLINES, INC., | Case No. 08-22581 (ASH) |
| Debtor. | |
| EOS AIRLINES, INC., | |
| Plaintiff, | Adversary Proceeding No. 08-08406 (ASH) |
| v. | Hearing Date: December 3, 2008 |
| | Time: 11:00 A.M. |
| NATIONAL CITY BANK OF MIDWEST | Place: Courtroom of the Honorable |
| | Adlai S. Hardin, Jr., |
| HASSAN TATANAKI | United States Bankruptcy Judge |
| FREEMARKET GLOBAL, LTD | |
| ERIKA VILLALBA | |
| JOHN DOE, | |
| Defendants. | |

**LIMITED OBJECTION OF NATIONAL CITY BANK, A NATIONAL
BANKING ASSOCIATION, SUCCESSOR BY MERGER TO
NATIONAL CITY BANK OF MIDWEST TO DEBTOR'S
MOTION TO DISMISS COUNTERCLAIMS OF HASSAN TATANAKI
AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

National City Bank, a national banking association, successor by merger to

National City Bank of Midwest (the "Bank"), by and through its undersigned counsel, hereby

submits this limited objection ("Limited Objection") to the Debtor Eos Airlines, Inc.'s ("Eos" or

"Debtor") Motion to Dismiss Counterclaims of Hassan Tatanaki and Motion for Partial Judgment on the Pleadings (the "Motion") and states as follows:

## BACKGROUND

1. On April 26, 2008, the Debtor sought voluntary relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date").

2. On or about May 8, 2008, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors.

3. Upon information and belief, the Debtor continues to operate and manage its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4. Prior to the Petition Date, on or about September 15, 2005, the Bank and Eos entered into an Air Carrier Depository Escrow Agreement (as at any time amended, the "Escrow Agreement") governing the terms and conditions pursuant to which the Bank acted as a depository for funds paid by a charterer in connection with the performance of charter air transportation by EOS. A copy of the Escrow Agreement is annexed hereto as Exhibit "1" and incorporated herein by reference.

5. On or about April 22, 2008, the Bank received a wire transfer in the amount of $470,174.24 from Hassan Tatanaki ("Tatanaki") for deposit into an escrow account at the Bank (the "Tatanaki Escrow Account"). The Tatanaki Escrow Account relates to an alleged agreement for air charter services between EOS and Tatanaki.

6. On or about September 18, 2008, Eos filed an adversary proceeding against the Bank, Tatanaki, Freemarket Global, Ltd., Erika Villalba and John Doe, Case No. 08-08406 (ASH) (the "Adversary Proceeding"), seeking in the complaint (the "Complaint"), *inter alia*, recovery of the deposit in the Tatanaki Escrow Account and a declaratory judgment that the deposit in the Tatanaki Escrow Account is property of the Debtor's estate.

2

7. On October 20, 2008, Tatanaki filed his Answer to Complaint and Counterclaim against Eos Airlines ("Tatanaki's Answer") [Document No. 5], in which, *inter alia*, he asserted a counterclaim against the Debtor (the "Tatanaki Counterclaim").

8. On October 20, 2008, the Bank filed its Answer, Affirmative Defenses and Counterclaim of National City Bank, a National Banking Association, Successor by Merger to National City Bank of the Midwest (the "Bank's Answer and Counterclaim") [Document No. 8.], in which the Bank denied the allegations of the Complaint and asserted counterclaims against the Debtor for breach of the Escrow Agreement and indemnification.

9. On November 5, 2008, the Debtor filed the Motion, seeking (i) dismissal of the Tatanaki Counterclaim, (ii) partial judgment in favor of Debtor and against Tatanaki on Count VII of the Complaint that objects to the proof of claim filed by Tatanaki against the Debtor, and (iii) ordering the release of the deposit in the Tatanaki Escrow Account to the Debtor.

10. On November 6, 2008, the Debtor filed its Answer to Counterclaim of National City Bank, A National Banking Association, Successor By Merger To National City Bank of Midwest. [Document No. 15].

11. Upon information and belief, Defendant Freemarket Global, Ltd. has defaulted on the Complaint and Debtor has filed a request for entry of default against it [Document No. 14.].

12. Upon information and belief, Defendant Erika Villalba was never properly served with the Complaint.

**LIMITED OBJECTION**

13. The Bank objects to Debtor's request in the Motion for the immediate turnover of the deposit in the Tatanaki Escrow Account to the Debtor, because pursuant to the terms of the Escrow Agreement, the Bank retains a lien upon the deposit in the Tatanaki Escrow Account in an amount equal to the Debtor's indemnification obligations to the Bank, including attorney's fees and costs incurred by the Bank.

14. The Escrow Agreement makes clear that the Debtor is obligated to indemnify the Bank against all claims filed against the Bank related to the Escrow Agreement including payment of all costs, expenses and legal fees incurred by the Bank in any such actions.

15. Specifically, under Section 4.2 of the Escrow Agreement, the Bank has "no responsibility in respect to any of the items deposited with it other than faithfully to follow the instructions [therein] contained." This section of the Escrow Agreement further provides that the Bank "may seek legal counsel and shall be fully protected in any action taken in good faith in accordance with such counsel's advice" and that the Bank shall be not "be required to defend against any legal proceedings which may be instituted against it in respect to the subject matter of [the Escrow Agreement] unless requested to do so by [the Debtor] and indemnified to its satisfaction against the cost and expense of such defense."

16. Under Section 4.3 of the Escrow Agreement, any obligation of EOS for indemnification shall be secured by all deposits and other property of EOS that is in the possession, custody or control of the Bank for any purpose and by security interest of lien as described in any security agreement, mortgage or document executed by EOS in favor of the Bank. In particular, Section 4.3 of the Escrow Agreement states:

4

> Carrier hereby agrees to assume liability for, and does hereby indemnify, protect, save and keep harmless Bank and its successors, agents and servants from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, or expenses of any kind which may be imposed on, incurred on, incurred by, or asserted against Bank in any way relating to, or arising out of, this agreement or the enforcement of any of the terms hereof by any person not a party hereto except only in the case of gross negligence or bad faith on the part of the Bank, whether of omission or commission, by Bank in the performance of its duties or obligations hereunder. *Any obligation of Carrier under this paragraph shall be secured by all deposits and other property of Carrier now or hereafter in the possession, custody or control of Bank for any purpose and by security interest of lien as described in any security agreement, mortgage or document now or hereafter existing, executed by Carrier in favor of Bank.* (emphasis added).

17. The filing of the Complaint has required the Bank to participate in this Adversary Proceeding, prepare the Answer and Counterclaim against the Debtor and take other actions to defend itself and with respect to its rights and interests. The Bank has incurred legal fees, expenses and litigation costs it otherwise would not have incurred.

18. The Bank will continue to incur legal fees, expenses and other litigation costs in this Adversary Proceeding until such time as the Bank is dismissed from this Adversary Proceeding, reimbursed its attorney's fees and costs and released from any and all claims against it.

19. The Escrow Agreement clearly obligates the Debtor to indemnify the Bank against these legal fees, expenses and costs it has already incurred in this Adversary Proceeding and those it will incur in the future.

20. To the extent that the Tatanaki Escrow Account or in any other account in the name of EOS at the Bank is property of EOS' estate, the Bank retains a lien thereon in an amount of EOS' indemnification obligations to the Bank pursuant to the terms of the Escrow Agreement.

5

21. While the Bank takes no position as to the Debtor's requests in the Motion for relief for (i) dismissal of the Tatanaki Counterclaim and (ii) judgment on the Debtor's objection to Tatanaki's proof of claim or as to the Debtor's argument that the Montreal Convention applies to the breach of contract dispute between the Debtor and Tatanaki, the Bank does object to the Debtor's request for a judgment releasing the deposit in the Tatanaki Escrow Account to the Debtor before (a) the Debtor has paid the Bank for all legal fees, expenses and other litigation costs incurred in this Adversary Proceeding, (b) all claims against the Bank have been dismissed with prejudice and (c) the Bank has been released from any and all claims against it.

22. The Motion makes no mention of the provisions of the Escrow Agreement that require the Debtor to indemnify the Bank or the Bank's lien upon the deposit in the Tatanaki Escrow Account. Moreover, the Motion cites to no factual or legal basis for extinguishing the Bank's lien upon the deposit in the Tatanaki Escrow Account or to permit the immediate turnover of these funds to the Debtor.

23. Because the Motion ignores the Bank's contractual right to indemnification from the Debtor and the Bank's lien upon the deposit in the Tatanaki Escrow Account, the Bank objects to that portion of the Motion that seeks a judgment releasing the deposit in the Tatanaki Escrow Account immediately to the Debtor and requests that this Court deny said request in the Motion accordingly.

### **CONCLUSION**

24. For the reasons stated herein, the Bank respectfully requests that this Court (a) deny the Debtor's Motion to the extent it seeks judgment for turnover of the subject deposit

in the Tatanaki Escrow Account to the Debtor and/or (b) for any other such relief that the Bank is entitled to recover by law.

Dated: November 17, 2008
      New York, New York

                              Respectfully submitted,
                              **DAY PITNEY LLP**

          By:    /s/ Marie Polito Hofsdal
                  Ronald S. Beacher (RB8837)
                  Marie Polito Hofsdal (MP7042)
                  7 Times Square
                  New York, New York 10036-7311
                  Telephone:  212-297-5800
                  Facsimile:  212-916-2940
                  Email:  rbeacher@daypitney.com
                           mhofsdal@daypitney.com

                  Attorneys for Defendant
                  National City Bank, a national baking
                  Association, successor by merger to National
                  City Bank of Midwest

# **EXHIBIT 1**

## AIR CARRIER DEPOSITORY ESCROW AGREEMENT

This Agreement made and entered into as of the 15th day of September, 2005 by and between , hereinafter called "Carrier", and **NATIONAL CITY BANK OF MIDWEST**, a National Banking Association, having a place of business at 3331 W. Big Beaver Rd., Ste. 200, Troy, MI 48084-2814, hereinafter called "Bank".

WHEREAS, Carrier is desirous of furnishing passenger charters, including Public Charters, originating in the United States pursuant to 14 CFR Part 212 and, with respect to Public Charters, 14 CFR Part 380, regulations of the U.S. Department of Transportation ("DOT").

WHEREAS, Carrier represents that it is either an air carrier holding a currently effective certificate issued under 49 U.S.C. 41102 or a foreign air carrier holding a currently effective permit issued under 49 U.S. C. 41302;

WHEREAS, Carrier will enter into a charter contract for passenger air transportation ("Charter Contract") as prescribed by 14 CFR 212.3 and, with respect to Public Charters, 14 CFR 380.29, with each charterer (the "Charterer); and

WHEREAS, Carrier desires to comply with 14 CFR 212.8 and to enter into an Agreement, designating Bank as depository (the "Depository Agreement");

WHEREAS, Bank is agreeable to being named as depository;

NOW, THEREFORE, the parties hereto, for and in consideration of the premises and the covenants hereinafter made, hereby agree as follows:

### SECTION 1: DEPOSITS

1.1 Carrier hereby designates Bank as the depository for funds paid by a Charterer in connection with the performance of charter air transportation by Carrier pursuant to designated Charter Contracts.

1.2 Bank shall establish and maintain a separate account for each charter, flight or rotation included in the Charter Contract. Bank shall be responsible hereunder only for amounts actually received by it and which

> (a) by the terms of the instrument evidencing the transfer itself state that the funds are payable to the Bank for deposit to the escrow account of carrier.

(b) by the terms of the same instrument of transfer or separate document, specify the Charterer's name and address, the dates of departure and return, destination abroad and destination upon return and whether the funds are to be split between the inbound and outbound flights. Bank is authorized to return funds to the Charterer if the information in this subparagraph is not supplied to Bank within two business days after receipt of the funds.

1.3 Bank agrees to receive funds from the following sources:

(a) By check or wire transfer from the Charterer's depository escrow account

(b) By check or wire transfer if Bank is the depository escrow agent for Charterer.

1.4 Bank shall return all checks received by it pursuant to this Agreement which shall be dishonored for any reason, to the sending party. Bank shall make the appropriate adjustment to the applicable Account to reflect the return of said dishonored check unless Charterer or Carrier shall have given Bank prior authority to debit its own account for the amount of such check. Bank shall not be required to accept checks on any charter, flight or rotation from any party whose prior checks have been dishonored unless payment is made either by cashiers check, money order, certified check or by debiting Charterer's or Carrier's account as provided above.

## SECTION 2: DISBURSEMENTS

2.1 Carrier shall certify in writing to Bank, upon completion of a charter, flight or rotation, the date upon which such charter, flight or rotation was completed. After receipt of said certification, Bank shall remit to Carrier from the separate escrow account maintained for such charter, flight or rotation the amount due for said charter, flight or rotation to the extent of the availability of funds to such account.

2.2 In the event that the Charter Contract provides for a round trip charter, Carrier may certify to Bank, upon completion of the outbound segment of the round trip charter, the date upon which such outbound segment was completed. After the receipt of said certificate by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the portion of the price of the charter certified by Carrier to be applicable to such outbound segment (less any commissions retained by any travel agent) to the extent of availability of funds in such account. Upon completion of the return segment of the round trip charter, Carrier shall certify in writing to Bank the date upon which such return segment was completed. After receipt of such certification by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the remaining portion of the price of the Charter Trip to the extent of availability of funds in such account.

2.3 Whenever Carrier has notified the Bank, by written certification, of the cancellation of any charter, flight or rotation trip for which a separate escrow account has been established, upon receipt of such notice Bank shall refund all payments (less cancellation penalties provided for in the Charter Contract and properly certified by Carrier to be properly deductible from such payments), received and held by Bank in such separate escrow account directly to Charterer or its assigns to the extent of the availability of funds in such account. In the case of a charter, flight or rotation for less than the entire capacity of an aircraft, such certification shall contain Carrier's representation either that the charter, flight or rotation was cancelled by Carrier or, if the Charter, flight or rotation was cancelled by the Charterer, that the Carrier has accepted a substitute charterer.

## SECTION 3: AMENDMENT AND TERMINATION

3.1 This Agreement may be amended in writing by the parties hereto provided, however, that such amendment may be subject to approval by DOT.

3.2 Either party hereto may terminate this Agreement at any time by mailing notice of its intention to terminate by registered mail to the other party, Charterer and DOT, provided, however, that any such termination by Carrier shall be subject to approval by DOT. Any such termination by Bank shall become effective 30 days following the date of mailing such notice. Notwithstanding the foregoing, no termination of this Agreement shall affect any obligation of Carrier under Section 4 of this Agreement.

## SECTION 4: RESPONSIBILITIES OF BANK AND INDEMNITY

4.1 It is agreed that the duties of Bank are only such as are herein specifically provided and are solely ministerial in nature and that it will incur no liability whatsoever except for willful misconduct or gross negligence so long as it has acted in good faith. Bank shall not have any responsibility to determine whether or not Carrier deposits with Bank all or any sums received by Carrier in connection with a Charter Trip or to determine whether Carrier fulfills its obligations under regulations of DOT, the Charter Contract or this Agreement.

4.2 Bank shall be under no responsibility in respect to any of the items deposited with it other than faithfully to follow the instructions herein contained. It may seek legal counsel and shall be fully protected in any action taken in good faith in accordance with such counsel's advice. It shall not be required to defend any legal proceedings which may be instituted against it in respect of the subject matter of these instructions unless requested so to do by Carrier and indemnified to its satisfaction against the cost and expense of such defense. It shall not be required to institute legal proceedings of any kind. It shall have no responsibility for the genuiness or validity of any document or other item deposited with it and it shall be fully protected if acting in accordance with any written instructions given to it hereunder and believed by it to have been signed by the proper parties.

Air Carrier Depository Docs - Rev. 6-02 – 0865824.03          3

4.3 Carrier hereby agrees to assume liability for, and does hereby indemnify, protect, save and keep harmless Bank and its successors, agents and servants from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, or expenses of any kind which may be imposed on, incurred by, or asserted against Bank in any way relating to, or arising out of, this agreement or the enforcement of any of the terms hereof by any person not a party hereto except only in the case of gross negligence or bad faith on the part of the Bank, whether of omission or commission, by Bank in the performance of its duties or obligations hereunder. Any obligation of Carrier under this paragraph shall be secured by all deposits and other property of Carrier now or hereafter in the possession, custody or control of Bank for any purpose and by security interest of lien as described in any security agreement, mortgage or document now or hereafter existing, executed by Carrier in favor of Bank.

4.4 In the event of any disagreement which results in adverse claims with respect to funds on deposit with Bank, Bank shall refuse to comply with any demands on it with respect thereto as long as such disagreement shall continue and in so refusing, Bank shall make no payment, and in doing so, Bank shall not be or become liable in any way to Carrier for Bank's failure or refusal to comply with such demands and it shall be entitled to continue so to refrain from acting and so to refuse to act until such conflicting or adverse demands shall finally terminate. Further, Bank in its sole discretion, may, in the event it has received written or verbal notice of any adverse or conflicting claim to funds in Accounts withhold payment under paragraph 2.1 hereof of up to 1 1/4 times the amount subject to such withheld balance of said funds until all of the adverse of conflicting claimants to such fund and all other parties having an interest therein have consented to the disbursement thereof or Bank has received a definitive, final court order directing disposition of such withheld funds.

## SECTION 5: ACCOUNTING AND REPORTING

5.1 Carrier agrees that no references to or use of the Bank's name will be made other than to indicate that the checks or money orders of Charterer should be made payable to the order of Bank.

5.2 Bank shall be entitled to such compensation for its services hereunder and any other services as may be agreed upon from time to time by Bank and Carrier.

5.3 Carrier shall furnish Bank with a copy of the Charter Contract entered into between Carrier and Charterer showing charter price, dates of settlement and/or price per seat.

5.4 Bank shall provide Carrier with periodic statements with respect to funds held under this Agreement.

Air Carrier Depository Docs - Rev. 6-02 – 0865824.03     4

5.5 Bank shall not be required to maintain documents received by it pursuant to this Agreement for more that two years after completion of the flight or rotation to which such documents related.

### SECTION 6: MISCELLANEOUS

6.1 All notices and other communications which are required under this Agreement shall be delivered to the following addresses or such other address as any party may hereafter designate in writing:

| | |
|---|---|
| to the Bank: | National City Bank of Midwest<br>Travel Industry Financial Services Department<br>3331 W. Big Beaver Rd., Ste. 200<br>Troy, MI 48084-2814 |
| To the Carrier: | Regulatory Analysis Division, X-57<br>Office of Aviation Analysis<br>U.S. Department of Transportation<br>400 Seventh Street, S.W.<br>Washington, D.C. 20590 |

or at such other address as either party hereto may hereafter designate in writing.

6.2 Neither party hereto may assign its rights or obligations hereunder without the prior written consent of the other party.

6.3 This Agreement is made and delivered in, and shall be construed in accordance with the laws of the State of Michigan. Carrier and Bank agree that any dispute arising under or in connection with this Agreement will be submitted to the Courts of the State of Michigan, to whose jurisdiction each party hereto hereby consents.

IN WITNESS WHEREOF, the parties hereto have executed this agreement by their officers hereunto duly authorized as of the day and year first above written.

**NATIONAL CITY BANK OF MIDWEST,**
a national banking association

_____
National City Bank Authorized Officer's Name

_____
Title

_____
Signature


Air Carrier: <u>Eos Airlines, Inc.</u>

_____<u>Eilif Serck-Hanssen</u>_____
Air Carrier Authorized Officer's Name

_____<u>Chief Financial Officer</u>_____
Title

_____
Signature

## SCHEDULE A

## PAYMENT SCHEDULE

We, the undersigned designees of_____, Carrier

and_____, (Charterer)

hereby certify that payments for the charter flight(s) listed below are due in full to the Carrier on the dates and in the amounts set forth herein. the dates on which payments are due are in no event earlier than 60 days (including day of departure) prior to the scheduled day of departure for each flight.

Payments to the Carrier shall be wire transferred to the Carrier's bank as follows:

Payments are <u>not</u> required to be placed into escrow.
All payments should be wire transferred to:

_____
(Bank)

_____
(Bank and Location)

for the account of the Carrier, Commercial Account Number

Carrier is required to establish an escrow account.
Wire transfer all funds to_____
                (Bank)

_____
(Bank and Location)

for the account of Carrier, Escrow Depository
Account Number_____

| *FLIGHT NUMBER | DEPARTURE DATE | PAYMENT DATE | AMOUNT DUE |
|---|---|---|---|

CARRIER_____

_____     _____
(Name)                                               (Signature)


CHARTERER

_____     _____
(Name)                                               (Signature)

*As per attached schedule

Air Carrier Depository Docs - Rev. 6-02 – 0865824.03         1

## SCHEDULE B

## CERTIFICATE OF CARRIER

I, the undersigned designee of_____, (Carrier)

do hereby certify that the following charter flights were completed on the following dates:

| FLIGHT NUMBER | DATE OF COMPLETION OF RETURNING FLIGHT (ROUND TRIP) |
|---|---|
| | |

Carrier:_____

_____
(Name)

_____
(Signature)

_____
(Title)

_____
(Date)

## SERVICE AGREEMENT

(Air Carrier Depository Escrow Agreement)

THIS SERVICE AGREEMENT ("Service Agreement") is made and entered into as of the day of <u>September 15</u>, 20<u>05</u> by and between National City Bank of Midwest, a national banking association, ("Bank"), and <u>Eos Airlines, Inc.</u> ("Carrier").

### Recitals

A.  Reference is made to a certain Air Carrier Depository Escrow Agreement of even date ("Depository Agreement") between the parties hereto. Unless otherwise defined in this Service Agreement, all capitalized terms shall have the meanings ascribed to such terms in the Depository Agreement.

B.  To maintain the confidentiality of the terms and conditions governing Bank's escrow services, the Bank and Carrier enter into this Service Agreement which Bank will <u>not</u> file with the DOT.

The parties agree as follows:

1.  The Carrier shall compensate Bank for its services in accordance with the Bank's then current Fee Schedule, copy of which is attached to this Service Agreement. Bank shall provide Carrier with sixty (60) days' prior written notice of any changes to such Fee Schedule. Carrier shall reimburse Bank for all out of pocket and employee overhead costs incurred (including reasonable legal fees incurred by Bank) in disbursing Escrow Funds under the Depository Agreement upon the failure of the Carrier to perform services under the Charter Contract. Bank shall have the right to retain all documents and/or other things of value owned by Carrier until Carrier has paid all amounts owed by Carrier to Bank.

2.  Pursuant to current DOT regulations, Bank shall invest funds held under the Depository Agreement ("Escrow Funds") in an FDIC insured interest bearing deposit account maintained at National City Bank of Midwest and its successors and assigns. Bank, in its sole discretion, is further authorized to invest the Escrow Funds in one or more interest bearing deposit accounts. All earnings on the Escrow Funds are subject to backup withholding penalties unless either a properly completed Internal Revenue Service form W8 or W9 certification is submitted by Carrier to Bank.

3.  Unless we have otherwise agreed in writing, we will provide weekly deposit statements and comprehensive monthly accounting reports for each charter flight.

4.  This Service Agreement is subject to annual review by the Bank.

**NATIONAL CITY BANK OF MIDWEST**

By: _____
    John Zaretti
Its:  Senior Vice President
    Travel Services Manager


Eos Airlines, Inc.
(Company Name)


Eilif Serck-Hanssen
(Carrier Authorized Officers' Name)


Chief Financial Officer
(Title)

_____/s/_____
(Signature)